UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Robert A. Robbins,<br>*Plaintiff,*<br><br>v.<br><br>Connecticut Institute for the Blind,<br>*Defendant.* | Civil No. 3:10cv1712 (JBA)<br><br><br><br>September 10, 2012 |

RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Robert A. Robbins filed suit against Defendant Connecticut Institute for the Blind ("CIB") alleging that Defendant discriminated against him on the basis of disability in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, and Section 504 of the Rehabilitation Act of 1974 ("Section 504"), 42 U.S.C. § 794 *et seq.* Both parties have moved for summary judgment: Defendant moves [Doc. # 64] for summary judgment on all claims, and Plaintiff moves [Doc. # 65] for summary judgment to enter in his favor as to the Defendant's liability on his claims. For the reasons that follow, both motions will be denied.

I.   Factual Background

Connecticut Institute for the Blind d/b/a Oak Hill Independent Housing of Wethersfield, Inc. ("CIB") is a non–profit corporation that operates 337 Hartford Avenue, Wethersfield, CT, 06109 as supportive housing for individuals with vision impairments. 337 Hartford Avenue was purchased with funding provided through the Department of Housing and Urban Development ("HUD") under Section 811 of the National Affordable Housing Act to provide supportive services to individuals with vision impairments.

CIB operates this building under a Project Rental Assistance Contract ("PRAC") executed between CIB and HUD, and under which HUD pays a housing subsidy on behalf

of all tenants residing at 337 Hartford Avenue. A condition of operating under a PRAC is that Defendant must complete re–certifications on an annual basis to renew the rent subsidies for the tenants in its building (*see* PRAC, Ex. C to Pl.'s Loc. R. 56(a)1 Stmt [Doc. # 65]), which involves securing income information from all tenants, and then calculating the amount of the rent subsidy that each tenant will receive under PRAC (*id.* at Part II). The HUD Handbook requires CIB to provide notice of the annual recertification process to its tenants in a format that is accessible to its tenants. (*See* HUD Handbook 4350.3, Ex. E to Pl.'s 56(a)1 Stmt at 7–9.) CIB is required to "make every effort to contact the disabled and frail elderly to be sure the requirements of the recertification process are communicated in a manner that is comprehended by the tenant." (*Id.* at 7–14.)

From 2006 to 2009, CIB provided Plaintiff with notice of the recertification requirement in an audio format—either by speaking to him in person or by telephone. Mr. Robbins always had his mail read to him, because he does not read Braille. (Robbins Dep., Ex. B to Def.'s Loc. R. 56(a)1 Stmt [Doc. # 64–3] at 37:3–13.) On June 19, 2009, Mr. Robbins executed an Annual Recertification–Initial Notice verifying that he was aware of his obligation to recertify his housing subsidy. (Annual Recertification–Initial Notice, Ex. E to Def.'s 56(a)1 Stmt.)

Plaintiff is seventy four years old, has diabetes, a mobility impairment, and is blind. His sole source of income is his Social Security benefit. He has resided at 337 Hartford Avenue since July 2005, and has paid his portion of the rent to CIB on time every month since them. The lease that Plaintiff signed with CIB contains certain "House Rules," which he reviews with CIB each year. (*See* Affidavit of Bruce Stovall, Ex. A to Def.'s 56(a)1 Stmt ¶ 5.) Section 5 of the House Rules provides:

> All tenants have the right to quiet enjoyment in their homes. . . you and your guests will not do anything that disturbs and interferes with the rights and comforts of other tenants. This includes but is not limited to playing any type of musical instrument, TV or stereo equipment in a disturbing fashion.

(*See* Lease, Ex. D to Def.'s 56(a)1 Stmt.)

Since 2009, CIB received several complaints about Mr. Robbins's conduct from other tenants in the building. On February 5, 17, 22, and 23, 2010, CIB received written complaints from Plaintiff's roommates that he had engaged in verbally abusive conduct towards them on several occasions. (*See* Statements of Roommates, Ex. I to Def.'s 56(a)1 Stmt; Case notes of Janice Homar, Ex. O to *id.*) On February 18, 2010, CIB sent Mr. Robbins a letter which stated

> Since the first week of their arrival, the other tenants have been a target of pattern of verbal insults and harassment. My staff and I received numerous complaints from both gentleman requesting assistance on how to best cope with your actions. Complaints include your use of demeaning profanity towards them, your insistence on telling them when they could shower, when they could wear shoes, and when they could be in common areas. Oak Hill had initially sent out a licensed clinical social worker in order to facilitate a better household environment but this did little to alleviate the problem. . . . This letter is to serve as official notification, per the Department of Housing and Urban Development (H.U.D.) requirements, that you are in violation of your lease agreement. Any further instances of misconduct that violate the H.U.D. lease stipulations and/or the Oak Hill Independent Housing Project House Rules will be grounds for termination of your lease.

(Ex. P to Def.'s 56(a)1 Stmt.)

Apparently, CIB continued to received complaints about Plaintiff's conduct. On June 8, 2010, CIB sent Mr. Robbins another letter, referencing a March 16, 2010[1] incident in

---

[1] Though the letter, attached as Exhibit T, references a March 16, 2009 incident, it appears that the correct date was actually in March of 2010, as stated in Defendant's 56(a)(1) Statement and as attested to by Mr. Bruce Stovall (*See* Stovall Aff. ¶ 12.)

3

which Mr. Robbins's remaining roommate called 911 "because your behavior that day made him feel extremely unsafe." (Ex. T to Def.'s 56(a)1 Stmt.) The letter also stated that Oak Hill's coordinator for services for the blind, Ms. Karin Agritelly, had met with Plaintiff on April 20, 2010 and had "reiterated that you had formally violated your Lease and Oak Hill's House Rules, and that Oak Hill would not renew the Lease which expires on June 30, 2010." (*Id.*)

Sometime between April and August 2010, Mr. Robbins met with Janice Homar, his Case Manager from the Connecticut Community Care Center, Inc. to discuss alternative housing options for Mr. Robbins. At his deposition, Homar testified that he had recommended that Senior Housing would be the most appropriate living arrangement for Plaintiff, as opposed to Section 8 housing. (*See* Deposition of Janice Homar, Ex. L to Def.'s 56(a)1 Stmt at 79:12–14.) Mr. Homar scheduled appointments with Mr. Robbins to visit and apply for Senior Housing. (*See* Ex. B at 77; Ex. L at 30–31.)

In 2010, Mr. Robbins's recertification date was June 30, 2010, and that year, CIB did not provide him with notice in an audio format of his need to recertify; rather, CIB claims that it sent him two written requests, on March 1 and on April 1, reminding Plaintiff to complete the necessary paperwork to complete the recertification process. (*See* Stovall Aff. ¶ 15.)[2] Though Mr. Robbins testified that in March 2010 he had gathered up his bank statements as he had done each year previously in preparation for recertification, he never spoke to CIB about recertification. (Robbins Dep., Ex. B at 59; Stovall Aff. ¶¶ 17.) Mr.

---

[2] There appears to be more confusion with dates in the record: Mr. Stovall's affidavit references Exhibits F, G, and H of Defendant's Local 56(a)1 Statement, and while Mr. Stovall's affidavit states that these letters were sent in *2011* (which cannot be correct, since Mr. Robbins was issued his notice to quit in 2010), the exhibits on file are dated March 1, April 1, and May 1, 2009.

Robbins's lease and recertification period ended on June 30, 2010. However, Mr. Robbins continued to pay, and CIB continued to accept, his portion of the monthly rent payment in July and August 2010. (*See* Ex. A to Pl.'s 56(a)1 Stmt.)

On July 12, 2010, CIB issued Mr. Robbins a Notice to Quit possession of the property. The Notice to Quit stated that "you have been verbally abusive to your roommate on several occasions, one of which prompted him to call 911. You have disturbed and interfered with your roommate's right to quiet enjoyment of the premises, despite repeated verbal and written warnings that such abusive and threatening behavior would not be tolerated." (*See* July 9, 2010 Notice to Quit, Ex. Q to Def.'s 56(a)1 Stmt; Certificate of Service of Process, Ex. Q at 2.) In the Notice, Mr. Robbins was warned that if he did not move out by July 16, 2010, an eviction action could be commenced against him. (*See* Ex. Q at 1.) On September 25, 2010, CIB issued a second Notice to Quit, listing as the reasons for the Notice "(1) nonpayment of rent within the grace period provided for residential property . . . and (2) by reason of an expressed stipulation in the lease." (*See* Sept. 25, 2010 Notice to Quit, Ex. R to Def.'s 56(a)1 Stmt.)

Mr. Robbins's rental subsidy terminated on August 26, 2010, but CIB did not inform him of this, nor did it inform Plaintiff that he had ten days to request a review of its decision to terminate his subsidy. (*See* Stovall Dep., Ex. F to Pl.'s 56(a)1 Stmt at 48:20–50:11.) On September 27, 2010, Mr. Robbins's attorney sent a letter to CIB's counsel that stated:

> Mr. Robbins has informed me that he did not receive the rent recertification notices from your client. Whether or not they were received, your client has an obligation under the Americans with Disabilities Act to do more than send letters to a blind man. Your client was aware that Mr. Robbins has both a case manager and a lawyer, yet neither of us was contacted about the rent recertification issue.

> As a reasonable accommodation to his disability, I request that Mr. Robbins be permitted to complete the rent recertification at this time.

(Ex. J to Def.'s 56(a)1 Stmt.) CIB rejected Mr. Robbins's request, and filed a summary process action to evict Mr. Robbins from his apartment, asserting two bases for eviction: (1) non–payment of rent and (2) failure to recertify. (*See* Ex. N to Pl.'s 56(a)1 Stmt.) Mr. Robbins subsequently filed a motion for preliminary injunction in this lawsuit to stay the state–court eviction proceeding. CIB eventually agreed to re–certify Mr. Robbins and withdrew the state–court eviction proceeding. (*See* Stovall Aff. ¶ 24.) Mr. Robbins continues to live at CIB.

II.   Discussion[3]

Both parties have moved for summary judgment as to Counts One and Two of Plaintiff's Amended Complaint. Mr. Robbins asserts that he is entitled to summary judgment because Defendant violated the FHA and Section 504 by refusing to make a reasonable accommodation, i.e. to complete the recertification process late, on account of his disability. Plaintiff also alleges separate violations under sections 3604 and 3617 of the FHA—first, that Defendant subjected Plaintiff to less favorable terms and conditions of his tenancy based on his disability, and that Defendant interfered with the exercise of his fair

---

[3] "Summary judgment is appropriate where, construing all evidence in the light most favorable to the non-moving party," *Pabon v. Wright*, 459 F.3d 241, 247 (2d Cir. 2006), "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c)(2). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law," and is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Unsupported allegations do not create a material issue of fact." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

housing rights when it took steps to evict him after he requested more time to complete his recertification. Defendant asserts that it is entitled to summary judgment because Mr. Robbins was a direct threat to other tenants, and that this defense entitles it to judgment as a matter of law.

>A. Reasonable Accommodation Under the Fair Housing Act (Count One) and Section 504 (Count Two)

To establish a violation under either the FHA and Section 504 for failure to make a reasonable accommodation,[4] a plaintiff must show:

> (1) he suffers from a handicap as defined by the FHAA; (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap may be necessary• to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation.

*Bentley v. Peace & Quiet Realty 2 LLC*, 367 F. Supp. 2d 341, 345 (E.D.N.Y. 2005).

>>1. Prima Facie Case

It is undisputed that Plaintiff is a person with a disability as defined under the FHA and Section 504. It is also undisputed that Plaintiff, through his attorney, requested an

---

[4] The Fair Housing Amendment Act of 1988, which added prohibitions against discrimination on the basis of disability, based the FHAA's reasonable accommodations provision on the "regulations and caselaw dealing with discrimination on the basis of handica"• under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, which prohibits discrimination against the handicapped in federally funded programs. *See* H.R.Rep. No. 100-711 at 25, *reprinted in* 1988 U.S.C.C.A.N. at 2186 (cited in *United States v. California Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1416–17 (9th Cir. 1994)). Thus, Plaintiff's failure to make a reasonable accommodation claim will be analyzed the same way for the purposes of both statutes. *See Super v. J. D'Amelia & Associates*, 2010 WL 3926887, at *3 ("For the purposes of simplicity, I refer to Super's claims as if they were brought under the FHA, although any discussion of her FHA claim applies equally to her . . . Section 504 claim[] unless noted otherwise.")

accommodation in the form of an extension of time to complete the recertification process, and that this request was denied. Plaintiff's request for extra time falls within the category of "reasonable" requests for accommodation. *See, e.g.*, *Super v. J. D'Amelia & Associates, LLC*, 3:09CV831 (SRU), 2010 WL 3926887, at *3 (D. Conn. Sept. 30, 2010) ("An extension of Section 8 benefits can serve as an accommodation when there is evidence to support the plaintiff's contention that continued rental subsidies will effectively allow her to use and enjoy her dwelling without posing a threat to her neighbors and the public.").

Plaintiff must also show that his requested accommodation is necessary to afford him equal opportunity to use and enjoy his dwelling. *See id.*; *see also Bryant Woods Inn, Inc. v. Howard County, Md.*, 124 F.3d 597, 604 (4th Cir. 1997) ("The 'necessary' element . . . requires the demonstration of a direct linkage between the proposed accommodation and that 'equal opportunity' to be provided to the handicapped person. This requirement has attributes of a causation requirement."). Though Mr. Stovall attests that Defendant sent Plaintiff three written notices reminding him to recertify, Plaintiff disputes that he ever received such notices. Further, the record is undisputed that Defendant did not submit Mr. Robbins's notice of his need to recertify in an audio format in 2010. (*See* Ex. B to Pl.'s 56(a)1 Stmt ¶ 3.) The record shows that the only year that he was not provided with a notice in audio format, Plaintiff missed the recertification deadline. It was at that point that Plaintiff requested his accommodation of extra time. Thus, it seems clear that the extra time requested was a "necessary" accommodation that would enable Plaintiff to recertify and prevent losing his housing for lack of recertification.

As to the fourth prong of Plaintiff's prima facie case, Plaintiff can show that Defendant refused to make such an accommodation. Plaintiff proffers evidence showing that

8

Defendant allowed at least one other blind tenant to recertify late in the process (*see* Ex. O to Pl.'s 56(a)1 Stmt ¶ 5), demonstrating the feasibility of the accommodation requested. Plaintiff has therefore met all of the requirements for a *prima facie* case of failure to make a reasonable accommodation. However, before summary judgment could be granted in Plaintiff's favor, Defendant's "direct threat" defense must be considered.

### 2. *Direct Threat Exception*

Defendant's motion for summary judgment and its opposition to Plaintiff's motion for summary judgment assert that Plaintiff's behavior towards other tenants rendered him a "direct threat" to the health or safety of other tenants, thereby rendering Defendant's refusal to accommodate him lawful under the FHA and Section 504.

The FHA and Section 504 both contain "direct threat" exceptions to their mandate that landlords or property managers may not discriminate on the basis of an individual's handicap. The FHA provides: "Nothing in this subsection requires that a dwelling be made available to an *individual whose tenancy would constitute a direct threat to the health or safety of other individuals* or whose tenancy would result in substantial physical damage to the property of others." 42 U.S.C. § 3604(f)(9) (emphasis added). "Invocation of the 'direct threat'• exemption requires 'objective evidence that is sufficiently recent as to be credible, and not from unsubstantiated inferences, that the applicant will pose a direct threat to the health and safety of others.'" *United States v. Massachusetts Indus. Fin. Agency*, 910 F. Supp. 21, 27 (D. Mass. 1996) (citing H.R.Rep. No. 711, 100th Cong., 2d Sess. (1988), *reprinted in* 1988 U.S.C.C.A.N. 2173, 2191 (explaining § 3604(f)(9) exemption)).

Here, while the record contains evidence that Mr. Robbins was disruptive and rude to his roommates (Mar. 18, 2010 Statement of James Penoyer, Ex. I to Def.'s 56(a)1 Stmt),

9

that he used derogatory and offensive language towards his roommates (Statements of James Penoyer; Statement of Robert Raymond), and that his behavior continued even after meetings with CIB's licensed social worker (Exs. O, P ), there are facts in dispute as to Defendant's reasons for terminating Mr. Robbins's lease. For example, while Defendant contends that the reason for issuing the two Notices to Quit and for initiating the eviction proceeding against Mr. Robbins was his repeated violations of the "House Rules," the reasons stated on the second Notice to Quit, and the eviction proceedings were that Mr. Robbins failed to pay rent and failed to recertify in a timely manner. (*See* Ex. R; S to Def's 56(a)1 Stmt; Ex. N to Pl.'s 56(a)1 Stmt at 2.) Thus, facts remain in dispute as to whether Mr. Robbins's behavior as a tenant is merely a post–hoc rationalization for the termination of his tenancy, and as this is central to both parties' assertions, neither is entitled to summary judgment on the reasonable accommodation claim.

    B.    Less Favorable Terms and Conditions in Violation of 42 U.S.C. § 3604(f)(2)

Under 42 U.S.C. § 3604, "it shall be unlawful—[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—that person." Courts have found that a tenant who is subjected to less favorable "'terms, conditions, or privileges' with respect to the apartment or the eviction proceedings brought against him than other tenants based on his [protected characteristic]" presents sufficient evidence to withstand summary judgment. *See Housing Rights Center v. Sterling*, 404 F.Supp.2d 1179, 1193 (C.D. Ca. 2004) (concluding that plaintiff had raised a "triable issue" that defendant created a hostile environment that subjected him to "different terms,

conditions and privileges from Korean tenants of the Apartment Building").

Plaintiff argues that he was not afforded the same terms, conditions, or privileges of rental of a dwelling as other tenants, and that "Defendant's refusal to communicate in a manner required by the Plaintiff's disability (despite having done so in prior years) is discriminatory on its face." (Pl.'s Mem. Supp. [Doc. # 65–1] at 16.) However, Plaintiff does not account for his own admission that he knew that it was Defendant's intention not to renew the lease on account of Plaintiff's allegedly inappropriate behavior toward his roommates. The record is admittedly convoluted as to whether Defendant's intentions were to not renew Plaintiff's lease because of his conduct (*see* June 8, 2010 Letter, Ex. T to Def.'s 56(a)1 Stmt), or because he failed to recertify his Section 8 housing assistance, as an "expressed stipulation" in his lease (*see* Robbins Eviction Complaint, Ex. N to Pl.'s 56(a)1 Stmt at 1–2). This confusion raises a genuine issue of fact as to whether Defendant's failure to provide Plaintiff his recertification notice in an audio–accessible format constituted a "refusal to communicate with [Plaintiff] in a manner required," *because* of Plaintiff's handicap, as is required for a violation of 42 U.S.C. § 3604(f)(2).

C.   Interference with Fair Housing Rights Under 42 U.S.C. § 3617

Mr. Robbins also claims that CIB interfered with his fair housing rights in violation of 42 U.S.C. § 3617. In order to prevail on a § 3617 claim, a plaintiff must show: "(1) that the plaintiff was "engaged in a protected activity"; (2) "that the [defendant] was aware of this activity;" (3) "that the [defendant] took adverse action against the plaintiff"; and (4) that "a causal connection exists between the protected activity and the adverse action." *Joseph's House and Shelter, Inc. v. City of Troy, N.Y.*, 641 F.Supp. 2d 154, 159 (N.D.N.Y. 2009). A retaliation claim under the FHA is governed by the *McDonnell Douglas* burden shifting

rules. *See Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown ("RECAP")*, 294 F.3d 35, 53–54 (2d Cir. 2002).

Plaintiff contends that he engaged in a protected activity when he requested a reasonable accommodation, and that Defendant took adverse action against him when it filed a summary process eviction action against him one week after his attorney requested the accommodation. (Pl.'s Mem. Supp. at 18.) Plaintiff points to Defendant's letter to his attorney, in which Defendant denied Plaintiff's request for accommodation as evidence of Defendant's retaliatory motive:

> I have spoken to our client about your fax today. Oak Hill is not willing to give your client additional time to recertify. Your client does not read Braille and have [sic] assistance from the Veterans Administration. He should have gotten at least one of the three letters and everyone on Section 8 knows they need to recertify yearly.
>
> In light of this issue, do you want me to have the complaint served on you instead of him?

(Sept. 27, 2010 Fax from Houston Putnam–Lowry to David Pels, Ex. M to Pl.'s 56(a)1 Stmt.) While it is the case that the "causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action," *RECAP*, 294 F.3d at 54, and that attempted evictions are considered "adverse actions" under the FHA, *see, e.g.*, *Bloch v. Firschholz*, 587 F.3d 771, 782 (7th Cir. 2009), the analysis does not end if Plaintiff establishes a *prima facie* case. Rather, Defendant is entitled to proffer a legitimate, non–retaliatory reason for its behavior. *RECAP*, 294 F.3d at 55.

Defendant asserts that due to Mr. Robbins's "unruly behavior," CIB had notified Robbins that his Lease was not being renewed in April 2010. For the purposes of Plaintiff's

motion for summary judgment, viewing the record in the light most favorable to Defendant, there is a genuine issue of material fact as to the reason that Defendant chose to initiate eviction proceedings against Plaintiff, and thus Plaintiff is not entitled to summary judgment on his § 3617 claim.

As to Defendant's motion for summary judgment, viewing the record in the light most favorable to Plaintiff, Plaintiff contends that the close temporal proximity between Plaintiff's request for an extension of time and Defendant's initiation of eviction proceedings, based on "non payment of rent" and failure to recertify rather than Plaintiff's misconduct as a tenant, could show that Defendant's assertion that Plaintiff's eviction was due to his claimed bad behavior was pretextual. Courts have held that where a Defendant changes its story about why it took an adverse action, it may be evidence of pretext. *See Stalter v. Wal–Mart Stores, Inc.*, 195 F.3d 285, 291 (7th Cir. 1999). Here, the record shows that Defendant only sent Plaintiff his September 2010 Notice to Quit after refusing to provide him with a reasonable accommodation, and initiated eviction proceedings shortly thereafter. Thus, Defendant's motion for summary judgment must also be denied.

IV. Conclusion

For the reasons discussed above, Plaintiff's motion [Doc. # 65] is DENIED, and Defendant's cross–motion [Doc. # 64] for summary judgment is also DENIED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 10th day of September, 2012.